JUDGE PETEBS
delivered the opinion oe the court.
Having carefully read more than once the elaborate petition and supplemental petitions for a rehearing in this case and the replies thereto, and having patiently and attentively read and considered the voluminous records in the case, the following is submitted as the opinion of the court, instead of the one heretofore delivered.
In August, 1865, John Crabb, assignee of John Millett, instituted an action in ordinary in the .Fulton Circuit Court against R. E. Larkin and others on four notes executed by said Larkin, alias Millett (and the alias will be henceforth dispensed with), as principal, and Geo. A. Scott and Claudius Millett as his sureties, on the 19th of January, 1858, to Crabb, assignee of Millet: one for $2,011, due six months from date; one for same amount, due ten months from date; one for same amount, due fifteen months from date; and one for $2,011.90, due twenty months from date.
On the same day that this action was instituted Mary F. Millett instituted an action against said Larkin on four notes executed by him to other parties, who had respectively assigned them to said Mary F. Millett, three of which were for $731.89, and the other one was for $788. And at the same time John Crabb, assignee as aforesaid, instituted a suit in equity in the Fulton Circuit Court against said Larkin on a note for $500, executed for the price of lot No. 1 in the town of Hickman, Fulton County, praying for a sale of said lot in satisfaction of said debt.
*156 At the September term, 1865, of the Fiilton Circuit Court the action at law on the four notes of Crabb, assignee, against R. E. Larkin was transferred to equity, and consolidated with the suit of the same plaintiff against Larkin on the note for the price of the lot.
Larkin then filed an elaborate answer, in which, after admitting the execution of all the notes sued on, he states that prior to December, 1857, John Millett and one Simmons had been engaged in selling dry goods as partners in the city of Louisville; that the firm was dissolved by Millett purchasing out the interest of Simmons and assuming to pay the outstanding debts of the firm, and then Millett carried on the business in his own name till December, 1857, when he failed, and made an assignment of his effects for the benefit of his creditors for debts created before he formed the partnership with Simmons, and the creditors of the late firm of Millett & Simmons; that the assignee accepted the trust, and proceeded to sell the effects of Millett; that - in January, 1858, he (Larkin) purchased goods of said assignee, which were a part of the effects of John Millett, to the amount of the four notes on which the action at law was brought; that shortly after said purchase he removed the goods to Hickman.and commenced the dry-goods business, which he continued until 1864; that John Millett resided in Louisville until November 1, 1862, engaged the most of his time in adjusting and discharging the debts of Millett & Simmons and of Millett; that he commenced the business of selling goods when he removed to Hickman in November, 1862, and had continued to do so ever since; that when he failed in business in Louisville his debts amounted to about sixty-seven thousand dollars, as shown by his deed of assignment, and his assets amounted to about fifty thousand dollars. Larkin further alleges in his answer that he was successful in business in Hickman; and with a view to relieve John Millett, who was his step-father, he purchased of the *157 debts of said Millett enumerated in the deed of assignment to the amount of about thirty-five thousand dollars, which, with the accruing interest to the time his answer was filed, would amount to fifty thousand dollars, and professes to file a list of the same, a part of them evidenced by notes and some reduced to judgments, with regular transfers from the original holders thereof to him, which he alleges he owns, and that the same are still due to him; and although Millett and his assignee have settled, and a balance is due from the assignee to Millett, and he had funds of the assigned effects in his hands, he had failed to discharge any part of the indebtedness to him; that John Millett had also failed to pay him any part of said indebtedness ; and that the assignee had appropriated the trust-effects to his own use. He makes his answer a cross-petition against the assignee and Millett, and prays for a settlement of the trust, and for judgment against them for the amount he asserts is owing to him. He also makes his answer a cross-petition against Mary F. Millett and John Millett,-and charges that the notes sued on in the name of said M. F. Millett (who is the mother of said John Millett) are in fact his debts; that said Mary is an aged woman over seventy years, in feeble health, and, even if she had the money to purchase said debts, would not under the circumstances have embarked in such business; but he denies that she had the means to make said purchases, and charges that the assignment of said notes to his mother was planned and procured by John Millett to prevent said Larkin from setting up his indebtedness to him as an offset to said demand. He furthermore alleged that John Millett had mortgaged his house and lot in Louisville to a creditor, and on a foreclosure of the mortgage and a sale of the property Millett purchased it, and he advanced' to him twenty-five hundred dollars to aid.him to-pay off his sale-bonds for the purchase-money on the promise of Millett to have the property conveyed to him; but he failed to perform *158 his promise, took the conveyance to himself, afterward sold the same property for six thousand dollars, and with the proceeds bought the notes on which Mary F. Millett sued him, and had them assigned to her; and he pleads the alleged indebtedness of Millett to him for the money advanced as aforesaid as an offset to the demands for which he was sued.
About the 5th of March, 1866, John Crabb, assignee of John Millett, Mary F. Millett, and John Millett, brought a suit in equity in the Fulton Circuit Court against R. E. Larkin, George A. Scott, John A. Wilson, Wm. Calvert, and others, charging in a petition of twenty pages that Larkin had mortgaged lot No. 1 in the town of Hickman, with the buildings thereon, to said George A. Scott to secure him against loss as his surety on the four notes to Crabb, assignee, for two thousand and eleven dollars each, on which suit had been brought, and that he had made said mortgage in contemplation of insolvency and to prefer Scott to the other creditors of Larkin; that after the execution of said mortgage Larkin and Scott had joined in a conveyance of the same property to Wilson; that Wilson had mortgaged the same property to Calvert; that said conveyances were all made to defeat the creditors of Larkin, and especially Crabb and the two Milletts, in the collection of their debts; and praying that the deed to Wilson and the mortgage to Calvert be set aside, and that the mortgage to Scott be treated as an assignment for the benefit of all the creditors of R. E. Larkin under the act of 1856 against fraudulent conveyances. With this suit all the other suits herein named, and a warrant for a forcible detainer in the name of J. A. Wilson v. John Millett, were consolidated.
The defendants answer that petition separately, and after denying all fraud and the execution of the mortgage to Scott in contemplation of insolvency and in violation of the statute of 1856 (supra), they controvert the allegation of indebtedness of Larkin to Crabb and the Milletts; and Larkin in his *159 answer denies that* he owes any thing to John Millett or his assignee, or to Mary U. Millett; and after referring to his answers in the suits previously instituted, and making them part of his answer in this, he alleges that he had paid off and discharged all of said notes.
At the October term, 1868, of said court, Crabb and the Milletts filed their reply to the cross-petition of R. E. Larkin, to which he demurred. His demurrer was overruled, and he then withdrew so much of his answer as set up claim to or ownership of the notes, claims, and judgments mentioned in his original answer as having been bought by and 'assigned to him, and relies for defense upon the plea that the claims of Mary F. Millett, John Crabb, Lichten, and others claimed in this suit had been paid off.
In their reply to Larkin’s cross-petition Crabb and the Milletts say, “ The matters set up in said answer were adjudged and settled in the suit of John Millett v. R. E. Larkin and others, in the Louisville Chancery Court, a copy of which is filed herewith as part hereof, marked P P 2, and they plead and rely upon the same as a full and complete bar to all matters set forth in defendant’s answer, etc.”
At the March term, 1866, the following order was made in the suit of John Crabb, assignee, against R. E. Larkin, &c.: “ The plaintiff appeared by attorneys, and on his motion it is ordered that this action be dismissed as to the three notes first due, sued on in this action, and defendants allowed to withdraw them.” (Page 538, sec. 3, of record.)
Upon the pleadings as herein substantially stated, and the evidence, the court below, on the 21st of December, 1868, rendered the following opinion and judgment, in substance:
1. That the judgment of the Louisville Chancery Court rendered in the case of Millett et al. v. Larkin is and was not such an adjudication of the issues in this case as amounts to a bar to their adjudication in this court.
*160 2. That the pleas of payment are not sustained by the evidence, either as to the notes of Crabb, assignee of John Millett, or Mary F. Millett; and then proceeds to render judgment in favor of Crabb, assignee, against R. E. Larkin and George A. Scott on- their note for two thousand and eleven dollars, due 19th of September, 1859, with interest, thereon at six per cent per annum from the date last named till paid; also judgment in favor of Crabb, assignee, against Larkin for five hundred dollars, with interest from the 22d of February, 1861, till paid.
3. It was adjudged that the mortgage made by Larkin to Scott of the lot No. 1 and houses thereon was made in contemplation of insolvency, and to prefer Scott to other creditors; and that the deed from Larkin and Scott to "Wilson for the same property was fraudulent, and that the same be set aside. Judgment was also rendered on all four of the notes assigned to Mary F. Millett, on which she had brought suit. And finally the case was referred to the master to take proof of such claims as should be presented against R. E. Larkin, and to ascertain by proof the amount of assets belonging to said Larkin, including notes, etc., which may'be in the hands of the receiver herein, and he is directed to report, etc.
Before the master, sitting to take proof of claims against R. E. Larkin, in obedience to the- judgment just recited, Crabb, assignee, and Millett appeared and presented the three notes for two thousand and eleven dollars each, as to which the action had been dismissed at the March term, 1866, and demanded that he should allow and report them as proper claims and just debts against R. E. Larkin. The master refused to allow them, and reported adverse to them. Exceptions were taken to that part of his report by Crabb and John Millett, and the record before us on this appeal commences by directing the receiver herein to collect the claims due R. E. Larkin, and by ordering an issue out of chancery to be tried *161 on the fourth day of the next term of the court, with specific directions to the jury “to find whether or not the three notes executed by R. E. Larkin and others to Smith Crabb, assignee, dated 19th day of January, 1858, have ever been paid, and whether or not said notes are the property of said assignee as such, or whether they belong to John Millett.”
To this order Crabb and John Millett, as appears in the' record, objected, because no such issues were made by the pleadings in the case.
It was further ordered by the court that the depositions and evidence used on the former trial of the case, so far as competent and proper, should be used “upon the next trial in this case, as also the depositions taken to be read before the commissioner.” It was then admitted by appellant that the three notes referred to belonged to John Millett, all of which are copied in the record.
At the term appointed a jury was impaneled and sworn to try the issue; and on that trial, as the record shows, after the defendants had closed their evidence and the plaintiff’s had introduced part.of theirs, they moved the court to give instruction No. 1, and in support of their motion read to the court the petition of Smith Crabb, assignee, against R. E. Millett, alias Larkin; said Millett’s answer, in which he alleged payment of said notes; and the depositions of A. M. Gazley, W. F. Barret, George A. Scott, and Wallace McDaniel; and the judgment of the court filed in this case of December, 1868. The record in the case showing that previous to the rendition of said judgment the plaintiffs had dismissed their suit as to the notes now in issue, the court refused the instruction, and plaintiffs excepted. They admitted that Crabb, as assignee of Millett, had sued Scott, &c., in the Louisville Chancery Court on the three notes now in controversy, and on a plea of the statute of limitations judgment was rendered in favor of Scott on the 15th of February, 1867.
*162 Plaintiffs avowed that their object in offering to read the petition, answer, depositions, judgment, etc., was to show that the plea of payment relied on in the present case had been in- issue on a former trial and had been adjudicated, and they relied on the former adjudication as a bar. After these rulings of the court plaintiffs moved to exclude the deposition of Wallace McDaniel, taken to be read as evidence on the trial of this issue, and on the trial of his motion read the depositions of Scott and McDaniel, taken September, 1868. In the case tried by the court this motion was overruled and plaintiffs excepted. They then moved to exclude the depositions of Gazley and Barret because their evidence was irrelevant; but the court refused the motion, except he excluded the answer of Gazley to the sixth interrogatory, and plaintiffs excepted to the ruling of the court in refusing to sustain the motion.
The defendants then offered in evidence that part of John Crabb’s deposition, taken in the case of Smith Crabb, assignee, against R. E. Millett, aims' Larkin, in the Louisville Chancery Court, which related to the insurance money received by R. E. Millett; to the reading of which the plaintiffs objected; but their objections were overruled, and they excepted.
The plaintiffs then asked instructions Nos. 2, 3, 4, and 5, all of which the court refused to give, and they excepted. At their instance instructions Nos. 6 and 7 were given. Instruction No. 8 was given on motion of defendant, and the court mo motu gave instruction No. 9.
At the close of the order containing the foregoing proceedings the elaborate petition of Crabb, assignee, and John Millett, &c., against Larkin, Scott, &c., filed in the Fulton Circuit Court, attacking as fraudulent the mortgage made by Larkin to Scott of lot No. 1 in Hickman, and the absolute deed of conveyance from Larkin and Scott to Wilson are copied, all of which have been heretofore commented on.
*163 A jury was impaneled to try the issue set down by the court for them to try; and having found for the defendant, and plaintiffs motion for a new trial having been overruled and judgment rendered in conformity to the verdict of the jury, the plaintiffs below prosecute this appeal.
On the motion for a new trial ten specific reasons were presented, which will be considered in their numerical order.
The first is that the court erred in ordering an issue out of chancery.
The power of courts of chancery to order a matter of fact strongly controverted to be tried by a jury has long been exercised. Formerly in England, where no jury could be summoned to attend a court of chancery, controverted facts were often ordered to be tried at the bar of one of the courts of common law, or at the assizes, which was effected by a feigned issue. But with us, where the same judge has both chancery and common-law jurisdiction, where he, sitting as chancellor in the exercise of a proper discretion, conceives that justice will be best obtained by submitting the controverted fact as to which the evidence is conflicting to a jury, he has the power to do so. And where in relation to a material fact the witnesses are equally credible, and their evidence is so contradictory as to render it doubtful on which side the scale preponderates, the chancellor will generally direct an issue in order to relieve his own conscience, and be satisfied by the verdict of a jury of the .truth or falsehood of the facts controverted. (2 Daniel’s Pleading and Practice, 1330-31.) In Rucker v. Howard, &c. (2 Bibb, 166), this court approved the practice. One of the questions in that case was whether a bond for the conveyance of land, on which the suit had been brought for a specific performance, had been altered by the complainant in a material part, which the defendant alleged was done. The chancellor before whom the suit was pending directed the issue to a jury, who found for the defendant; he *164 decreed accordingly, and this court in referring to the fact said, “That there had been an alteration of the bond in a material part there can be no doubt. The fact was found by a jury impaneled and sworn to try the issue, which finding has not been set aside, and must be taken as conclusive
More effect is here given to the finding of the jury than could perhaps be sustained by the weight of authority. But the jurisdiction of the chancellor to direct the issue to a-jury is distinctly recognized, and we are aware of no case in which the practice is condemned. Nor is it necessary in order to have the issue tried by a jury that it should be formed by the pleadings. The issue may be granted on exceptions to a master’s report (Daniel on Pleading and Practice, 1339), just as was done in this case.
The second ground is that the court improperly permitted the depositions of Gazley and Barret to be read as evidence.
The record shows that these witnesses gave two depositions each, taken at different times, both of which are copied, and the bill of exceptions shows that the plaintiffs offered to read a deposition of each of these witnesses to the jury; but it does not show when those offered by the plaintiffs were taken, nor the particular depositions he did offer to read; but the defendant objected, and as the court sustained his objections,.the plaintiffs read neither of them. Subsequently the defendant offered to read to the jury one deposition of each of these witnesses, to which the plaintiffs objected, but their objections were overruled; and a deposition of each of the witnesses was read, but the bill of exceptions does not inform us which are those that defendant read. If he read those the plaintiffs offered to read, it would seem that they have not been prejudiced, and ought not to complain that the defendant did what they wanted done. And as it does not appear that the depositions of these witnesses read by appellee were objected to, this court can not say that the court below erred in admitting them.
*165 The third and fourth are that the court erred in permitting the depositions of Scott and McDaniel to be read as evidence to the jury. The objection to Scott’s evidence is that of a supposed interest he has in the result. It has been adjudged that he is not responsible for the debts evidenced by the notes in controversy before his depositions were taken; and, although judgment had been rendered against him on one of these series of notes, the interest he might be supposed to feel to have his principal relieved from the payment of those in controversy was too remote to render him incompetent, but could only go to his credibility.
McDaniel may not have heard all the conversation between Scott and Crabb, but what he stated he heard was a distinctive fact, and, if true, a controlling one in this contest, and it was proper to let his evidence go to the jury, who could give to it such weight as under the circumstances they considered it entitled to.
The fifth alleged error is that the court refused to give instruction No. 1 as asked by appellants.
That instruction takes from the jury the province of determining whether the evidence conduced to establish the very fact in issue, but assumes the fact to be proved, and bases the instruction, peremptory in its character, on that assumption. If that instruction was proper, the court should have discharged the jury, and decided the question without their aid.
The sixth is that the court refused to permit appellants to read as evidence to the jury the petition of Crabb, assignee, &c. v. R. E. Larkin, &c., in the Fulton Circuit Court, Larkin’s answer, the depositions of Gazley and others, and the judgment of the court in the same case.
The object in offering said proceedings and depositions was doubtless to show that the matters then in controversy had been adjudged in the case referred to. The principle upon which judgments are held conclusive upon the parties requires *166 that the rule should apply only to that which was directly in issue.
Lord Chief Justice De Grey, in the Duchess of Kingston’s case, laid down the rule very clearly, and it has been followed ever since. He said, “From the variety of cases relative to judgments being given in evidence in civil suits these two deductions seem to follow as generally true: First, that a judgment of a court of concurrent jurisdiction directly upon the point is, as a plea in bar or as evidence, conclusive between the same parties upon the same matter directly in question in another court; secondly, that the judgment of a court of exclusive jurisdiction directly upon the point is in like manner conclusive upon the same matter between the same parties coming incidentally in question in another court for a different purpose.” (1 Green., sec. 528.)
It is apparent that the same matters were not directly in question in the suit referred to as are in litigation here. The suit as to these notes had been dismissed, suit brought against another party on them in a different court, and when the judgment which appellants asked to read as evidence was rendered there was no suit or action pending on these notes. As well might it be said that where a party held t-yvo notes on the same individual, and sued him on one and recovered judgment on it, and in a suit on the second note, which matured after the first, and the obligor pleaded payment, that the payee could rely upon his judgment on his first note as evidence conclusive that the second note was not paid. The court below properly refused to admit the documents and depositions as evidence.
The next objection to the ruling of the court below is that instructions Nos. 2, 3, 4, and 5 were refused. They all embrace the same principle, and are predicated upon the assumption that the judgment of December, 1868, on the note of Larkin and Scott for $2,011.90 in favor of Crabb, assignee, *167 is conclusive of the question involved in this controversy. For the reasons stated in considering the propriety of the action of the court in refusing to permit appellants to read the record and judgment as evidence said instructions should not have been given.
We perceive no error in giving instruction No. 8 to the jury; it fairly submitted the question of payment to the consideration of the jury. And instruction No. 9 directs the jury to disregard that portion of Crabb’s evidence that related to the amount of money realized by R. E. Larkin from his insurance policy, evidence introduced by Larkin.
The evidence was not only conflicting, but strangely contradictory, and this court can not interpose to set aside the verdict, approved as it was by the court below.
The record of the suit of Crabb v. Larkin, &c., in the Louisville Chancery Court was not offered in evidence to the jury, nor was the judgment in that case relied on as a bar, as is manifest from the character of instructions offered by appellants.
A rehearing therefore, if granted, could not change the result; and for that reason, waiving the question as to whether the petition was filed in proper time, the same must be overruled, and the judgment affirmed.